Filed 11/19/14  Ashegian v. Beirne CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| MARC ASHEGIAN, | B254020 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC480403) |
| JAMES G. BEIRNE et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Reversed in part and affirmed in part.

The Luti Law Firm and Anthony Luti for Plaintiff and Appellant.

Stocker & Lancaster and Michael J. Lancaster for Defendants and Respondents.

## INTRODUCTION

Plaintiff and appellant Marc Ashegian appeals from a post-judgment order granting a motion for attorney fees under the private attorney general doctrine (Bus. & Prof. Code, § 6158.4, subd. (i); Civ. Proc. Code, § 1021.5) brought by defendants and respondents James G. Beirne, the Law Offices of James G. Beirne, Paul Mendoza Allen and the Law Offices of Paul M. Allen (respondents). Ashegian also appeals from the denial of his motion to tax costs and from the denial of his motion for sanctions under Code of Civil Procedure section 128.7 (section 128.7) directed at respondents' motion for attorney fees.

The operative complaint by Ashegian alleged a cause of action against respondents under Business and Professions Code section 6158.4 (section 6158.4), based on Internet advertising by respondents that allegedly violated State Bar Act regulations (Bus. & Prof. Code, §§ 6158, 6158.1, and 6158.3) governing the content of electronic media advertising for legal services. The trial court sustained a general demurrer to the complaint, and we affirmed the judgment in an unpublished decision (*Ashegian v. Beirne,* June 20, 2013, B245028 [nonpub. opn] (*Ashegian I*)), on the ground that the complaint failed to allege that, before filing his civil suit against respondents, Ashegian satisfied the procedural requirement of submitting a complaint to the California State Bar regarding the allegedly unlawful advertisements.

In granting respondents' post-judgment motion for attorney fees, the trial court found that this court's decision enforcing the State Bar screening process for legal advertising complaints served an important public interest: avoiding frivolous lawsuits that burden attorneys' First Amendment rights to advertise. We conclude that the trial court erred in finding that respondents' defense of this case satisfied the requirements of the private attorney general doctrine. We therefore reverse the award of attorney fees to respondents.

2

We affirm the denial of Ashegian's motion for sanctions under section 128.7 as well as the denial of his motion to tax costs.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

*The Complaints*

Ashegian brought a "civil enforcement action" against respondents pursuant to section 6158.4, subdivision (e), alleging that they were engaging in online advertising that was false, misleading, and deceptive, in violation of the State Bar Act, which, in part, regulates advertising for legal services. In particular, the initial complaint alleged that respondent Allen, an attorney, maintained a "banner ad" on the website associated with the newspaper *Balita* that is distributed to the Filipino-American community in Los Angeles County. According to the complaint, when an Internet user clicked on the banner ad, he or she was directed to respondent Beirne's web page instead, which Ashegian alleged constituted a deceptive act. The complaint further alleged that Beirne's web page featured a video of an unidentified woman making false, misleading or deceptive statements of support for the Beirne law office.

Ashegian amended his complaint to state that following service of the original complaint on respondents, Internet users who clicked on the banner ad for Allen were no longer routed to Beirne's web page. Instead, users were directed to Allen's single-page website, which stated, "We are a federally designated debt relief agency," language which Ashegian alleged did not satisfy the requirements set forth in 11 United States Code section 528, subdivisions (a)(3) and (4), (b)(1). The amended complaint further alleged that a blog posting by Allen falsely stated

---

[1] Many of the background facts stated herein are borrowed from the *Ashegian 1* decision.

3

that Allen's firm had been handling bankruptcy cases for over a decade, when in fact Allen was a new lawyer in his mid-twenties. Ashegian alleged that the Internet advertising violated sections 6158 (barring electronic advertising that, taken as a whole, is false, misleading, or deceptive), 6158.1 (creating a rebuttable presumption that certain types of messages are false, misleading, or deceptive), and 6158.3 (requiring that particular disclosures be included if an electronic advertisement portrays a result in a particular case). Ashegian sought multiple $5,000 fines against individual respondents for numerous broadcasts allegedly violating the State Bar Act, for a total of $115,000 in fines pursuant to section 6158.4, subdivision (e), as well as attorney fees.

*Respondents' Demurrer and Trial Court's Ruling*

Respondents demurred to the amended complaint, arguing in part that the complaint failed to allege compliance with the mandatory State Bar administrative review process set forth in section 6158.4, subdivision (a), a prerequisite for filing a civil enforcement action under subdivision (e).[2] In response, Ashegian argued

---

[2] Section 6158.4 provides in relevant part that "(a) Any person claiming a violation of Section 6158, 6158.1, or 6158.3 may file a complaint with the State Bar that states the name of the advertiser, a description of the advertisement claimed to violate these sections, and that specifically identifies the alleged violation. A copy of the complaint shall be served simultaneously upon the advertiser. The advertiser shall have nine days from the date of service of the complaint to voluntarily withdraw from broadcast the advertisement that is the subject of the complaint. If the advertiser elects to withdraw the advertisement, the advertiser shall notify the State Bar of that fact, and no further action may be taken by the complainant. The advertiser shall provide a copy of the complained of advertisement to the State Bar for review within seven days of service of the complaint. Within 21 days of the delivery of the complained of advertisement, the State Bar shall determine whether substantial evidence of a violation of these sections exists. The review shall be conducted by a State Bar attorney who has expertise in the area of lawyer advertising.

4

"(b)(1) Upon a State Bar determination that substantial evidence of a violation exists, if the member or certified lawyer referral service withdraws that advertisement from broadcast within 72 hours, no further action may be taken by the complainant.

"(2) Upon a State Bar determination that substantial evidence of a violation exists, if the member or certified lawyer referral service fails to withdraw the advertisement within 72 hours, a civil enforcement action brought pursuant to subdivision (e) may be commenced within one year of the State Bar decision. If the member or certified lawyer referral service withdraws an advertisement upon a State Bar determination that substantial evidence of a violation exists and subsequently rebroadcasts the same advertisement without a finding by the trier of fact in an action brought pursuant to subdivision (c) or (e) that the advertisement does not violate Section 6158, 6158.1, or 6158.3, a civil enforcement action may be commenced within one year of the rebroadcast.

"(3) Upon a determination that substantial evidence of a violation does not exist, the complainant is barred from bringing a civil enforcement action pursuant to subdivision (e), but may bring an action for declaratory relief pursuant to subdivision (c).

"(c) Any member or certified lawyer referral service who was the subject of a complaint and any complainant affected by the decision of the State Bar may bring an action for declaratory relief in the superior court to obtain a judicial declaration of whether Section 6158, 6158.1, or 6158.3 has been violated, and, if applicable, may also request injunctive relief. Any defense otherwise available at law may be raised for the first time in the declaratory relief action, including any constitutional challenge. Any civil enforcement action filed pursuant to subdivision (e) shall be stayed pending the resolution of the declaratory relief action. The action shall be defended by the real party in interest. The State Bar shall not be considered a party to the action unless it elects to intervene in the action.

"(1) Upon a State Bar determination that substantial evidence of a violation exists, if the complainant or the member or certified lawyer referral service brings an action for declaratory relief to obtain a judicial declaration of whether the advertisement violates Section 6158, 6158.1, or 6158.3, and the court declares that the advertisement violates one or more of the sections, a civil enforcement action pursuant to subdivision (e) may be filed or maintained if the member or certified lawyer referral service failed to withdraw the advertisement within 72 hours of the State Bar determination. The decision of the court that an advertisement violates Section 6158, 6158.1, or 6158.3 shall be binding on the issue of whether the advertisement is unlawful in any pending or prospective civil enforcement action brought pursuant to subdivision (e) if that binding effect is supported by the doctrine of collateral estoppel or res judicata.

"If, in that declaratory relief action, the court declares that the advertisement does not violate Section 6158, 6158.1, or 6158.3, the member or lawyer referral service may broadcast the advertisement. The decision of the court that an advertisement does not violate Section 6158, 6158.1, or 6158.3 shall bar any pending or prospective civil

5

that section 6158.4 requires only residents of states *other than California* to go through the State Bar review process set forth in the statute, and thus he contended that, as a California resident he did not need to comply with that process.  He noted that while subdivision (a) of section 6158.4 provides that any person "*may* file a complaint with the State Bar" describing a violation of sections 6158, 6158.1, or 6158.3  (§ 6158.4, subd. (a), italics added), subdivision (e) states that such a violation "*shall* be cause for a civil enforcement action brought by any person residing within the State of California" (§ 6158.4, subd. (e), italics added).  The trial court disagreed with Ashegian's interpretation of the statute, and found that section 6158.4 required him to submit a complaint to the State Bar despite his California residency and to comply with the other requirements of that statute as a prerequisite to any civil enforcement action pursuant to subdivision (e) of that section.

---

enforcement action brought pursuant to subdivision (e) if that prohibitive effect is supported by the doctrine of collateral estoppel or res judicata.
 ". . .
 "(d)  The State Bar review procedure shall apply only to members and certified referral services.  A direct civil enforcement action for a violation of Section 6158, 6158.1, or 6158.3 may be maintained against any other advertiser after first giving 14 days' notice to the advertiser of the alleged violation.  If the advertiser does not withdraw from broadcast the advertisement that is the subject of the notice within 14 days of service of the notice, a civil enforcement action pursuant to subdivision (e) may be commenced.  The civil enforcement action shall be commenced within one year of the date of the last publication or broadcast of the advertisement that is the subject of the action.
 "(e)  Subject to Section 6158.5, a violation of Section 6158, 6158.1, or 6158.3 shall be cause for a civil enforcement action brought by any person residing within the State of California for an amount up to five thousand dollars ($5,000) for each individual broadcast that violates Section 6158, 6158.1, or 6158.3."

*Ashegian I Unpublished Opinion*

On appeal, in *Ashegian I*, this court addressed the proper interpretation of section 6158.4, a question of first impression, and affirmed the trial court's conclusion that Ashegian was required to comply with the State Bar review procedures set forth in section 6158.4 as a condition precedent to any civil enforcement action.

We interpreted section 6158.4's required screening process as follows: "Subdivisions (a) through (d) of section 6158.4 set forth a procedure for State Bar review of complaints about electronic media advertising by attorneys and certified lawyer referral services that allegedly violates sections 6158, 6158.1, or 6158.3. In providing that any person 'may' file a complaint with the State Bar about such a violation, subdivision (a) merely describes the legal recourse that individuals have with respect to advertising that they believe violates the electronic advertising regulations. If the advertiser voluntarily withdraws the advertisement from broadcast within nine days and notifies the State Bar of that fact, 'no further action may be taken by the complainant.' (§ 6158.4, subd. (a).) If the advertiser does not initially withdraw the advertisement, and the State Bar review results in the determination that 'substantial evidence of a violation of these sections exists,' the advertiser has yet another opportunity to withdraw the advertisement within 72 hours of the determination and to thus prevent any further action by the complainant. (§ 6158.4, subd. (b)(1).) The complainant is also barred from bringing a civil enforcement action pursuant to subdivision (e) if the State Bar review concludes that substantial evidence of a violation does *not* exist, unless the complainant subsequently brings a declaratory relief action and the court declares that the advertisement violates section 6158, 6158.1, or 6158.3, and the advertiser broadcasts the advertisement following that decision. (§ 6158.4, subds. (b)(3), (c)(2).) If the State bar determines that substantial evidence of a violation exists

7

and the advertiser fails to withdraw the advertisement within 72 hours, a civil enforcement action pursuant to subdivision (e) may be commenced. (§ 6158.4, subd. (b)(2).) Subdivision (d) clarifies that the State Bar review procedure applies only to advertisements by 'members' (the definition of which includes law firms (see § 6157, subd. (a)), and certified lawyer referral services, and that direct civil enforcement actions pursuant to subdivision (e) may be maintained against *other* advertisers if such advertisers do not withdraw their advertisement from broadcast after being given 14 days' notice. (§ 6158.4, subd. (d).) [¶] It is within the context of these preceding provisions that we must construe the language of subdivision (e), which provides in pertinent part that 'a violation of Section 6158, 6158.1, or 6158.3 shall be cause for a civil enforcement action brought by any person residing within the State of California.' (§ 6158.4, subd. (e).) Although subdivision (e) provides that only residents of California may bring a civil enforcement action, this does not mean that the limitations on the right to bring such an enforcement action, as set forth in the preceding subdivisions, do not apply to California residents. Rather, the rights of California residents to bring a civil enforcement action under subdivision (e) are necessarily qualified by the preceding subdivisions that relate to it and refer to it. [¶] The purpose of section 6158.4 is evident from its plain language: to establish a State Bar screening procedure for complaints about electronic media advertising by 'members' and certified lawyer referral services and to afford these groups multiple opportunities to withdraw from broadcast offending advertisements before any punitive action can be taken. Beirne and Allen and their respective law offices qualify as 'members' and accordingly, section 6158.4 required Ashegian to submit a complaint to the State Bar and to comply with the other requirements of that statute as a prerequisite to any civil enforcement action pursuant to subdivision (e) of that section. Because

8

Ashegian's complaint failed to allege compliance with these review procedures, he failed to state a claim for a violation of sections 6158, 6158.1, or 6158.3."

We further noted that the legislative history revealed that, in crafting the provisions restricting electronic advertising by attorneys, "the legislature grappled with the need to take measures to protect the public against the danger of false and misleading electronic advertising for legal services without encouraging frivolous lawsuits that could have a chilling effect on attorneys' protected speech." We found that "[t]he 'State Bar screening' of complaints was proposed in the Senate Committee on the Judiciary as a means of deterring frivolous lawsuits, along with safe harbors for advertisers who withdrew the allegedly offending electronic advertisements."

*Respondents' Attorney Fees Motion*

Respondents subsequently filed a motion for an award of attorney fees totaling $46,300, under section 6158.4, subdivision (i), and Code of Civil Procedure section 1021.5 (section 1021.5). They argued that they were "forced to defend this action to enforce important public benefits designed for the public, including the elimination of frivolous lawsuits." In so arguing, they relied on our holding in *Ashegian I* that the State Bar review process mandated by subdivision (e) of section 6158.4 was intended to deter frivolous lawsuits challenging legal advertisements that could burden attorneys' First Amendment right to advertise.

In opposing the motion for attorney fees, Ashegian argued: (1) the motion was untimely; (2) this court decided in *Ashegian I* that respondents were not entitled to attorney fees on appeal; and (3) respondents failed to meet their burden to satisfy the elements of section 1021.5, including the requirements that (a) the action have resulted in enforcement of an important public interest, where respondents' deceptive advertising at the base of the lawsuit was contrary to the

public interest and the lawsuit was not dismissed on the merits but rather on procedural grounds; (b) the action have conferred a significant benefit on the general public or a large class of persons; and (c) the financial burden of respondents' defense be out of proportion to their individual stake in the case.

In their reply, respondents conceded that they had not timely moved for their fees incurred *prior to the original judgment* entered after the trial court sustained their demurrer. Thus, they stated that they had withdrawn their request for fees except as to $18,900 in fees incurred on appeal and in connection with the motion for attorney fees. Respondents further noted that this court had not determined the issue of attorney fees in *Ashegian I*. They contended that the result in the lawsuit benefited attorneys by enforcing the State Bar screening process, and they further contended that the financial burden of incurring almost $59,000 in fees and costs to defend this matter was out of proportion to their individual stake in the case, particularly given that the lawsuit was frivolous. They asserted that the *Ashegian I* decision and the record constituted sufficient evidence to support the attorney fee award.

The trial court granted respondents' motion for attorney fees in the amount of $18,900. The court concluded that respondents' successful demurrer asserting that Ashegian could not circumvent the State Bar screening process under section 6158.4, enforced the important public interest the screening process was intended to serve: avoiding frivolous lawsuits that burden attorneys' First Amendment rights to advertise. Thus, the court found that respondents had met the statutory requirements for an award of attorney fees under section 6158.4, subdivision (i), and section 1021.5.

10

*Ashegian's Motion for Sanctions under Section 128.7*

After serving respondents with a motion for sanctions under section 128.7 on October 3, 2013, Ashegian filed the motion on October 25, 2013. Ashegian asserted three grounds for the requested sanctions: (1) respondents knew their motion for attorney fees incurred in the trial court proceedings was untimely; (2) the Court of Appeal had already ruled respondents were not entitled to attorney fees; and (3) respondents did not support their motion with evidence.

Respondents responded that they had already withdrawn the request for attorney fees incurred during the trial court proceeding, and had advised Ashegian of the withdrawal by email and letter dated October 24, 2013. They further asserted Ashegian mischaracterized the correction made to the *Ashegian I* opinion whereby this court deleted the erroneous reference to attorney fees in the disposition. Finally, they asserted that the *Ashegian I* opinion, the case record, and the statutory provisions relied upon sufficiently supported their motion for attorney fees.

In reply, Ashegian asserted that respondents had acknowledged in an email on the final day of the 21-day safe harbor period that their request for attorney fees at the trial court level was untimely, but they failed to withdraw the improper pleading during the safe harbor period as required to avoid sanctions.

The court determined that it was unclear from the record if Ashegian had satisfied the procedural requirement that he serve the section 128.7 motion on respondents at least 21 days before filing it. Further, even if that procedural requirement were met, respondents' failure to withdraw the request for a portion of the attorney fees did not warrant sanctions. The court found that the other asserted grounds for the section 128.7 motion also did not justify sanctions because Ashegian had not shown that respondents' legal contentions were unwarranted or

11

that the motion was presented for improper purposes.  The court thus denied the motion for sanctions.

*Ashegian's Motion to Tax Costs*

Respondents also sought to recover $500.75 in printing costs,[3] among other costs.  Ashegian filed a motion to tax costs that, as relevant on appeal, requested that the court strike the portion of the printing costs attributable to the copying of respondents' appendix, which Ashegian contended was largely duplicative of his own appendix.  The court found the printing costs were reasonable, denied the motion to tax costs in its entirety, and awarded respondents a total of $2,462.18 for costs incurred at both the trial court and appellate levels.  A superseding judgment was entered awarding respondents attorney fees and costs in the above amount.

Ashegian timely appealed from the post-judgment orders awarding attorney fees and costs to respondents, and denying his motion for sanctions.

**DISCUSSION**

I.    *Attorney Fee Award*

Ashegian contends that the trial court erred in awarding respondents attorney fees under section 6158.4, subdivision (i) and section 1021.5 for fees incurred on the *Ashegian I* appeal.[4]  Section 6158.4 subdivision (i) provides that "[i]n any civil action brought pursuant to this section, the court shall award attorney's fees

---

[3]    Their memorandum of costs sought $661.50 for printing costs, but they later reduced the request to $500.75 after discovering a mistake.

[4]    Ashegian does not dispute that a successful party may recover fees under sections 6158.4 and 1021.5 for services on appeal.  (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1356; Cal. Rules of Court, rule 3.1702(c).)  He also does not contest the *amount* of the attorney fee award.

pursuant to Section 1021.5 . . . if the court finds that the action has resulted in the enforcement of an important public interest or that a significant benefit has been conferred on the public." Section 1021.5 provides, in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Where there is no monetary recovery, factor (c) is not applicable. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 934-935 (*Woodland Hills*).) "'The burden is on the claimant to establish each prerequisite to an award of attorney fees under section 1021.5.'" (*Samantha C. v. State Dept. of Developmental Services* (2012) 207 Cal.App.4th 71, 78.)[5]

We normally review the trial court's decision to award attorney fees for an abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169,

---

[5]    Section 1021.5 "'is an exception to the general rule in California, commonly referred to as the American rule and codified in section 1021, that each party to a lawsuit must ordinarily pay his or her own attorney fees.'" (*Azure Ltd. v. I–Flow Corp.* (2012) 207 Cal.App.4th 60, 66.) "'[T]he private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' [Citation.]" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 (*Graham*).)

1175.)  "'However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.'"  (*Ibid.*; see *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391.)

### A.  *Interpretation of Section 6158.4, subdivision (i)*

#### 1.  *"Action"*

Ashegian first contends that only a *plaintiff* may qualify for an attorney fee award under section 6158.4, subdivision (i), because the provision states that "the court shall award attorney's fees pursuant to Section 1021.5 . . . if the court finds that the *action has resulted in the enforcement* of an important public interest or that a significant benefit has been conferred on the public."  (§ 6158.4, subd. (i), italics added.)  Ashegian's argument is not well-taken.

The interpretation of section 6158.4, subdivision (i) is a matter of first impression.  "In matters of statutory construction, '[w]e apply well-established principles of statutory construction in seeking "to determine the Legislature's intent in enacting the statute "'so that we may adopt the construction that best effectuates the purpose of the law.'"'"  [Citations.]  We begin with the statutory language because it is generally the most reliable indication of legislative intent.  [Citation.]  If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.  [Citation.]'  [Citation.]  But if the statutory language may reasonably be given more than one interpretation, courts may employ various extrinsic aids, including a consideration of the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.  [Citation.]"  (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214 (*Whitley*).)

14

Ashegian notes that an "action" is defined as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Civ. Proc. Code, § 22.) However, it has been held that "[a]n action is not limited to the complaint or the document initiating the action but the entire judicial proceeding." (*Palmer v. Agee* (1978) 87 Cal.App.3d 377, 387.) Thus, in *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, in interpreting an attorney fee clause providing for an attorney fee award to the prevailing party "'[i]n any action or proceeding to enforce or interpret the provisions of this Agreement,'" the court held that the word "action" encompasses the entire judicial proceeding, including any defenses asserted, and thus the defendant could be awarded attorney fees. (*Id.* at p. 274; but see *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 672-673 [the common meaning of "action" does not include procedural steps such as a demurrer or other defenses].) Moreover, nothing in subdivision (i) of section 6158.4 states that only the party who initiates the "action" may recover attorney fees. Rather, it provides only that the action must result in the enforcement of an important public interest. If the action results in the enforcement of an important public interest, nothing on the face of the statute would disqualify a prevailing defendant from recovering attorney fees.

We note that section 1021.5 similarly provides for an award of attorney fees "to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest." By Ashegian's logic, a defendant could not recover fees under that provision because he or she did not initiate the action. However, courts have not interpreted section 1021.5 that way, and instead uniformly have held that a successful defendant who satisfies the other requirements of section 1021.5 may qualify for an award of attorney fees under the

15

provision.  (See *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 231–232 (*Environmental Protection*); *DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 198 (*DiPirro*); *Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 622 (*Wal-Mart*); *Hull v. Rossi* (1993) 13 Cal.App.4th 1763, 1768.)  In *DiPirro*, the court noted that "'[g]enerally speaking, the opposing party liable for attorney fees under section 1021.5 has been the defendant person or agency sued, which is responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation.' [Citation.]  However, to effectuate the policy of providing substantial attorney fees to successful litigants in suits enforcing important public policies, the courts 'have taken a broad, pragmatic view of what constitutes a "successful party."'  [Citation.] An 'opposing party' against whom attorney fees may be awarded pursuant to . . . section 1021.5 is defined broadly as 'a party whose position in the litigation was adverse to that of the prevailing party.  Simply put, an "opposing party" within the meaning of section 1021.5 is a losing party.' [Citation.]  Thus, prevailing defendants are entitled to attorney fees upon a proper showing. . . .  An award of attorney fees pursuant to section 1021.5 is available if a party defends an action '"primarily to advance"' a public interest '"rather than personal interests." [Citation.]'  [Citation.]"  (*DiPirro, supra,* 153 Cal.App.4th at pp. 198-199.)

Likewise, we conclude that where the requirements of the statute are otherwise satisfied, a defendant may recover attorney fees under section 6158.4, subdivision (i).


2.  *Required Elements for Fee Award under Section 6158.4, subdivision (i)*

As noted above, section 6158.4, subdivision (i) provides that in civil enforcement actions brought under section 6158.4, subdivision (e), "the court shall

16

award attorney's fees pursuant to Section 1021.5 . . . if the court finds that the action has resulted in the enforcement of an important public interest *or* that a significant benefit has been conferred on the public." (§ 6158.4, subd. (i), italics added.) But an award of attorney fees under section 1021.5 requires not only a finding that the action has resulted in the enforcement of an important public interest, *but also* that (a) a significant benefit has been conferred on the general public or a large class of persons, and (b) the necessity and financial burden of private enforcement are such as to make the award appropriate. (*Woodland Hills, supra,* 23 Cal.3d at pp. 934-935; *Whitley, supra*, 50 Cal.4th at p. 1214.) Thus, there is an internal inconsistency in section 6158.4, subdivision (i): while that statute authorizes an award of attorney fees on a finding *either* that the action has resulted in the enforcement of an important public interest *or* that a significant benefit has been conferred on the public, it directs that such award be made "pursuant to" section 1021.5. That statute, in contrast, requires a finding of *both* components of section 6158.4, subdivision (i), along with an *additional* finding that the award of attorney fees is justified by the necessity and financial burden of private enforcement.

Below and on appeal, respondents argued that in order to award fees, the trial court need only have found that the action resulted in the enforcement of an important public interest.[6] The superior court adopted the same interpretation, and

---

[6]     Respondents actually made this argument based on their erroneous interpretation of section 1021.5, not the language of section 6158.4. In arguing that a trial court need only find *either* an "important right affecting the public interest" *or* a "significant benefit" to award fees under section 1021.5, they cite to *Woodland Hills* and *Graham*, but neither decision supports their contention. *Woodland Hills* held that "we must consider whether: (1) plaintiffs' action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons' and (3) 'the necessity and financial burden of private enforcement are such as to make the award

17

based its award of attorney fees solely on its finding that the underlying action enforced the important public interest of deterring frivolous lawsuits that have a chilling effect on attorneys' legal advertising. We conclude that the trial court applied an incorrect legal standard, and reached the wrong result.

We start by examining the use of the phrase "pursuant to section 1021.5" in section 6158.4, subdivision (i). "In common understanding, the phrase 'pursuant to' means 'in conformance to or agreement with' and 'according to.'" (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1122, citing Webster's 3d New Internat. Dict. (2002) p. 1848 [where agreement specified that claims shall be arbitrated "pursuant to the FAA," the parties plainly intended all the provisions of the FAA to apply].) By providing for attorney fee awards "pursuant to" section 1021.5, section 6158.4, subdivision (i) seemingly requires that all elements of section 1021.5 be satisfied before an award of attorney fees may be made.

In examining the policy intended to be served by section 6158.4, and the legislative history,[7] we find no basis for concluding that the legislature meant to impose less stringent requirements for a party to recover attorney fees under section 6158.4, subdivision (i) than under section 1021.5. The public interests implicated by section 6158.4, subdivision (i) – the protection of consumers against

_____

appropriate.'" (*Woodland Hills, supra,* 23 Cal.3d at p. 935.) In *Graham,* the Supreme Court noted that "section 1021.5 requires *both* a finding of a significant benefit conferred on a substantial number of people and a determination that the 'subject matter of the action implicated the public interest.' [Citation.]" (*Graham, supra,* 34 Cal.4th at p. 578, italics added.)

[7] On our own motion, we have taken judicial notice of the legislative history of section 6158.4, as enacted by Assembly Bill No. 3659 (1993-1994 Reg. Sess.) as chapter 4, article 9.5. (*Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 400, fn. 8 [appellate court may take judicial notice of legislative history materials on own motion].)

misleading or fraudulent legal advertising, as well as the protection of the limited First Amendment rights of attorneys to advertise via electronic media – are no more weighty than the countless fundamental public interests served in cases where section 1021.5 applies. (See, e.g., *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 892–893 [enforcing CEQA]; *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 867 [protecting the right to lawful protests]; *Hull v. Rossi, supra*, 13 Cal.App.4th at p. 1768 [vindicating rights to present and receive information concerning ballot initiatives]; *Wal-Mart, supra,* 132 Cal.App.4th at pp. 622-623 [protection of constitutional right of initiative and referendum]; *Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 172 [protecting constitutional abortion right]; *Braude v. Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1013 [enforcing right to have fair and reasonable election procedures in nonprofit corporations].)

We thus conclude that the legislature intended to incorporate all the requirements of section 1021.5 in section 6158.4, subdivision (i). Therefore, the court erred by considering only whether an important public interest was enforced[8] and failing to consider whether (1) the action conferred a significant benefit on the public and (2) the necessity and financial burden of private enforcement make an award of attorney fees appropriate.

---

[8]      We assume without deciding that the trial court correctly concluded that the decision in this case, enforcing the State Bar screening process for legal advertising complaints, served an important public interest of avoiding frivolous lawsuits that burden attorneys' First Amendment rights to advertise. (See *Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1568 (*Family Planning*) [although free speech rights are, as a general matter, among those recognized as important public interests, defendant failed to show that his defense of libel action actually resulted in the enforcement of his or anyone else's rights to free speech].)

19

We need not remand this case to the trial court to consider the application of these additional two elements, because the facts are undisputed and because respondents claim that it was our opinion in *Ashegian I* that helped enforce the alleged public interest. "An appellate court is in at least as good a position as the trial court to judge whether the legal right enforced through its own opinion is 'important' and 'protects the public interest' and whether the existence of that opinion confers a 'significant benefit on the general public. . . .'" (*Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 8; see *Environmental Protection, supra*, 190 Cal.App.4th at p. 229 ["[W]here the claim of significant benefit rests on an appellate opinion, it may be more appropriate for this court, rather than the trial court, to decide whether the case qualifies for a fee award."].)

## B. *Significant Benefit Requirement*

As a matter of law, respondents cannot show that a significant benefit has been conferred on the general public or a large class of persons.

"The 'significant benefit' required by . . . section 1021.5 need not be tangible or concrete but may be recognized from the effectuation of a fundamental policy." (*Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 543.) "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('*significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of

20

the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills, supra*, 23 Cal.3d at pp. 939-940; see *Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, 335 ["[T]he mere vindication of a statutory violation is not sufficient to be considered a substantial benefit by itself."].)

Beyond the mere vindication of a violation of section 6158.4's procedural requirements, any "success" by respondents on First Amendment grounds is quite limited and relatively insignificant. *Family Planning* is instructive. In that case, the plaintiffs, who were obstetricians at a clinic that performed abortions, sued the defendant, an anti-abortion protestor, for distributing leaflets alleged to be libelous because they falsely stated that the plaintiffs specialized in late-term abortions, among other accusations. (*Family Planning, supra,* 39 Cal.App.4th at p. 1563.) The trial court denied the plaintiffs' request for a preliminary injunction and later the plaintiffs dismissed their complaint without prejudice. (*Id.* at pp. 1565-1566.) The defendant sought attorney fees under section 1021.5, asserting that he had enforced free speech rights. The appellate court affirmed the trial court's denial of the fee motion, holding that even assuming the defendant enforced an important public interest, the defendant's "'success' in the litigation was very narrow, benefiting only himself. The most generous reading of [the defendant's] accomplishment was that he protected his own right to circulate a particular type of leaflet vilifying respondents for performing late-term abortions. In the factual circumstances here presented, however, he was obviously treading very close to the line separating protected expression from libel. It certainly cannot be said that by obtaining a dismissal of the action, [the defendant] won a 'ringing declaration' of the rights of abortion opponents to conduct the same or a similar campaign." (*Id.* at p. 1570.) The court further concluded that "the Legislature did not intend to

authorize an award of attorney fees in every case in which first amendment issues are only marginally involved." (*Id.* at p. 1570; cf. *Slayton v. Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 551-552 [holding that successful mandate proceeding to end illegal conduct of school administrators, including violations of First Amendment and Education Code, benefited a large class of persons where all current and future students and parents at school would benefit from school's mandatory compliance with trial court order].)

Respondents likewise have not presented a compelling argument that this action served to protect the significant First Amendment rights of many, or any, besides themselves. We should not lose sight of the fact that the main purpose of section 6158.4 is to protect the public from deceptive and misleading attorney advertising, and the private right of enforcement for California residents under subdivision (e) of that provision was intended to support this purpose. It is true that the State Bar screening process is intended as a counterbalance, to protect against frivolous lawsuits that could have a chilling effect on attorneys who want to advertise in electronic media. But the First Amendment concerns implicated by section 6158.4 are secondary to the statute's main goal to protect the public against deceptive advertising. Moreover, respondents presented no evidence that since the amendment of the State Bar Act in 1994 to include the private right of enforcement against legal advertisers, there has been anything approaching a barrage of civil enforcement actions directed at legal advertisers. The dearth of authority with respect to section 6158.4 suggests that the contrary is true. Thus, it would be speculative to find that more than a trivial number of attorneys stand to significantly benefit from the affirmation of the State Bar review process in *Ashegian I*.

Moreover, our decision in *Ashegian I* is unpublished, and thus has no precedential weight. (See *Pacific Legal Foundation v. California Coastal Com.*

22

(1982) 33 Cal.3d 158, 167 [ no "significant benefit" where litigation resulted in a superior court decision declaring an unconstitutional taking that was limited to the parties and had no precedential value]; cf. *County of San Diego v. Lamb* (1998) 63 Cal.App.4th 845, 852-853 [significant benefit conferred by published appellate decision construing child dependency statute to clarify that DCFS may not seek reimbursement of AFDC benefits from the noncustodial parent of a minor who is the custodial parent of the needy child]; *Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 111 (*Beach Colony*) [finding a significant benefit where published decision established the rights of all similarly situated landowners].)

Even assuming that some legal advertisers other than respondents could benefit from our unpublished decision, this small subset is not a "large class of persons" or the "general public." (§ 1021.5.) *DiPirro* is analogous in this respect. In that case, the plaintiff invoked Proposition 65, the California Safe Drinking Water and Toxic Enforcement Act, against an automobile manufacturer based on its use of an industrial solvent in its touch-up paint. The trial court found that warnings under that Act were not required. (*DiPirro, supra*, 153 Cal.App.4th at p. 163.) The manufacturer sought private attorney general fees, but the trial court denied the request. The appellate court affirmed, holding that "[t]he judgment that Proposition 65 warnings are not required on its touch-up paint tubes is a result that affects a limited class of consumers of that product. . . . Further, the benefit conferred upon automobile manufacturers or dealerships was certainly not significant to the general public or a large class of persons." (*Id.* at p. 199.) Similarly here, any benefit to attorneys who wish to advertise via electronic media could not be deemed a significant benefit to the general public or a large class of persons.

23

As such, as a matter of law, respondents were not entitled to attorney fees under section 6158.4, subdivision (i) and section 1021.5, and we reverse the trial court's order awarding attorney fees to respondents.[9]

II. *Motion for Sanctions*

Ashegian contends that the trial court erred in denying his motion for sanctions under section 128.7, based on respondents' motion for attorney fees. On appeal, Ashegian asserts that sanctions were warranted for two reasons: (1) respondents failed to withdraw within the 21-day safe harbor period the portion of their motion seeking an award of attorney fees incurred in the trial court proceedings, even though they knew the request for such fees was untimely; and (2) respondents did not support their attorney fee motion with evidence.

"'The purpose of section 128.7 is to deter frivolous filings.'" (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 421.) "'[S]ection 128.7 provides that the filing of a pleading certifies that, to the attorney or unrepresented party's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading is not being presented "primarily for an improper purpose," the claims, defenses and other legal contentions therein are "warranted," and the allegations and other factual contentions "have evidentiary support." [Citation.] If these standards are violated, the court can impose an appropriate sanction sufficient to deter future misconduct, including a monetary sanction. [Citation.]' [Citation.]" (*Ibid.*)

---

[9]     Because we hold that respondents were not entitled to attorney fees because no significant benefit was conferred on the general public or a large class of persons, we need not reach the final element required for an award of attorney fees under section 1021.5:  the necessity and financial burden of private enforcement.

24

"Because our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments" (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 448), "section 128.7 sanctions should be 'made with restraint' [citation] and are not mandatory even if a claim is frivolous." (*Ibid.*) "We review a . . . section 128.7 sanctions award under the abuse of discretion standard. [Citation.] We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Id.* at p. 441.)

A. *Failure to Withdraw Request for Attorney Fees for Trial Court Proceedings*

"[S]ection 128.7 provides for a 21–day period during which the opposing party may avoid sanctions by withdrawing the offending pleading or other document." (*Peake v. Underwood, supra,* 227 Cal.App.4th at p. 441; see § 128.7, subd. (c)(1).) "'This permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating the pleading as well as the sanctions request.' [Citation.]" (*Liberty Mutual Fire Ins. Co. v. McKenzie* (2001) 88 Cal.App.4th 681, 692.) The 21-day period is triggered by service of the motion on the offending party. (§ 128.7, subd. (c)(1); *Galleria Plus, Inc. v. Hanmi Bank* (2009) 179 Cal.App.4th 535, 538.)

On October 3, 2013, Ashegian served respondents with the motion for sanctions. On October 24, 2013, the twenty-first day following the service of that motion, respondents advised Ashegian by letter that the portion of their motion for attorney fees incurred before the trial court was "withdrawn." The following day, October 25, 2013, Ashegian filed his motion for sanctions.

25

Ashegian suggests that respondents' letter stating that the portion of the motion was withdrawn was not sufficient to deem it withdrawn and to stop the 21-day safe harbor period from running. However, he cites no authority supporting his position. The letter was sufficient to put Ashegian on notice that he did not need to waste time and money continuing to litigate the issue of the pre-appeal attorney fees. As such, the letter withdrawal satisfied the purposes of section 128.7, and we conclude sanctions were appropriately denied on this basis.

B.    *Failure to Provide Evidentiary Support for Attorney Fee Motion*

Ashegian contends that respondents' motion for attorney fees lacked evidentiary support, in violation of section 128.7, subdivisions (b)(1) and (3). As discussed above, respondents' motion for attorney fees was based on the erroneous premise that the trial court needed only to find that the underlying action had resulted in the enforcement of a public interest. Respondents contended that the *Ashegian I* decision provided a sufficient basis for that finding by the trial court, and that no additional evidence was needed.

Although both respondents and the trial court interpreted sections 6158.4 and 1021.5 incorrectly, we do not believe sanctions should be imposed on respondents in this case. Even if we were to deem respondents' motion for attorney fees to be frivolous or unsupported, the imposition of sanctions still would not be mandatory. (*Peake v. Underwood, supra,* 227 Cal.App.4th at p. 448.) As such, we affirm the denial of the motion for sanctions.

III.    *Motion to Tax Costs*

Ashegian contends that the trial court should have granted his motion to tax respondents' printing costs with respect to their 108-page appendix filed in

26

*Ashegian I.*[10] He asserts that the costs to copy the appendix were not "reasonably necessary" because eight of the 11 documents were already included in Ashegian's appendix, and the remaining three documents were not relevant to the issues on appeal. Respondents failed to address this particular contention below or on appeal. The trial court's order likewise did not address the argument that the costs for the appendix were not reasonably necessary because the included documents were duplicative or irrelevant. Instead the court found that a total printing charge of $500.75 for 10 copies each of respondents' brief, appendix, and request for judicial notice was a reasonable amount. We review the trial court's award of costs for an abuse of discretion. (*Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1209.)

The appellate rules encourage parties to stipulate to a joint appendix on appeal, but allow parties to prepare separate appendixes. (Cal. Rules of Court, rule 8.124(a)(3).) "A respondent's appendix may contain any document that could have been included in the appellant's appendix or a joint appendix." (Cal. Rules of Court, rule 8.124(b)(5).) An appendix "must not . . . [c]ontain documents . . . filed in superior court that are unnecessary for proper consideration of the issues." (Cal. Rules of Court, rule 8.124(b)(3)(a).) Recoverable costs on appeal include costs for printing an appendix. (Cal. Rules of Court, rule 8.278(d)(1)(B); see Advisory Com. comment to same.) However, the Advisory Committee Comment to rule 8.278(c)(2) provides that "a party may seek to strike or tax costs on the ground that an opponent included unnecessary materials in the record."

---

[10]   Ashegian failed to identify in his motion to tax costs or his appellate briefs the particular copying costs associated with the appendix. We have determined from our review of the invoices submitted in the record that these costs totaled approximately $134, including tax.

We have taken judicial notice of the contents of the appendixes in *Ashegian I*, and conclude Ashegian is correct that eight of the pleadings included in respondents' appendix were included in Ashegian's appendix.  However, whereas Ashegian's appendix did not include conformed copies of those pleadings, respondents' appendix did.  Although conformed copies are not required for documents included in an appendix (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 988; Advisory Com. com., Cal. Rules of Court, rule 8.124(d)), we do not consider it an abuse of discretion to award costs for a respondent's appendix that includes conformed copies where the appellant's appendix did not include conformed copies.

As for the three allegedly irrelevant documents relating to respondents' notices to the State Bar of their withdrawal of the legal advertisements at issue, respondents requested that the trial court take notice of those documents as government agency records, in connection with their demurrer.  We find no abuse of discretion in permitting recovery of costs for such items included in their appendix.

## DISPOSITION

The award of attorney fees is reversed, and the denials of the motion for sanctions and motion to tax costs are affirmed. Otherwise, the superseding judgment is affirmed. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

29